# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MICHAEL B. WADSWORTH,

    Petitioner,

vs.

BRIAN E. WILLIAMS, et al.,

    Respondents.

Case No. 2:13-cv-00401-GMN-GWF

**ORDER**

    Before the court are the second amended petition for writ of habeas corpus (ECF No. 26), respondents' answer (ECF No. 57), and petitioner's reply (ECF No. 62). The court finds that relief is not warranted, and the court denies the petition.

    Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

Ground 1(A) is a claim that the ballistics evidence was insufficient to support the verdict that petitioner was guilty of first-degree murder with the use of a deadly weapon. On this issue, the Nevada Supreme Court held:

> Wadsworth was convicted of murdering Jose Esparza by shooting him, causing a rupture of his femoral artery.  The State presented evidence placing Wadsworth at the crime scene and shooting a revolver.  Wadsworth's theory of defense was that a second gunman was present at the scene and fired the fatal shot. . . .
>
> Wadsworth next argues that there was insufficient evidence to convict him because the firearms expert could not affirmatively state that the shots fired came from Wadsworth's revolver.  The firearms expert testified that the bullets recovered from the crime scene came from a Colt .38 caliber revolver.  He compared the recovered bullets to the Colt .38 caliber revolver found at the crime scene.  The firearms expert testified that he could not conclusively determine that the Colt .38 recovered from the crime scene was the murder

> weapon, but he also could not exclude it. Wadsworth later testified that the Colt .38 revolver was his and that he had fired the gun in the victim's direction, but that he had fired it into the ground. No other weapon was recovered from the crime scene.
>
> It is for the jury to determine the weight and credibility of the evidence. The jury apparently found credible the firearm expert's testimony, as well as Wadsworth's acknowledgment that he owned the Colt .38 found at the crime scene. Moreover, additional evidence supported Wadsworth's conviction, including eyewitness testimony placing him at the crime scene and shooting a revolver. Therefore, we conclude that the firearm expert's testimony did not render the evidence adduced at trial insufficient to support his conviction.

Ex. 75, at 1, 4-5 (ECF No. 14-14, at 2, 5-6) (footnotes omitted). "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16.

The court addresses first petitioner's argument that the evidence was insufficient to support the verdict that petitioner was guilty of first-degree murder. Petitioner cites to conflicting eyewitness testimony, biased testimony of persons who were present with Esparza, dubious testimony of a jailhouse informant, evidence of another man with a gun being present, evidence of more shots fired than bullets recovered, and evidence of shots being fired into the ground. Petitioner is presenting an argument why the jury should not believe this evidence. However, as the Nevada Supreme Court noted correctly, whom and what to believe is reserved to the jury, not to a reviewing court. Petitioner has not demonstrated how the Nevada Supreme Court's decision was an unreasonable application of Jackson v. Virginia.

Regarding the weapon, people saw petitioner firing a gun, running away, and dropping the gun into a trash can. Petitioner admitted in testimony that he handled and fired the gun. The police recovered the gun. It was a Colt .38 Special revolver. The police also recovered three bullets, one from Esparza and two from walls. The prosecution's firearms expert test-fired the gun. He found that the bullets were .38 Special, and that they were fired from a particular class of weapon, based

upon the number and twist of marks that the rifling of the gun's barrel left upon the bullets. That class included the Colt recovered from the location of the shooting, but it also included any other Colt .38 Special revolver and any other gun chambered for .38 Special with the same number and twist of rifling grooves. The recovered Colt did not mark well bullets fired from it. The firearms expert could not match some of the bullets that he knew he had test-fired from it. In short, the firearms expert could not rule that the recovered Colt fired the recovered bullets, and he could not rule out that the recovered Colt fired the recovered bullets. Petitioner has not shown how the Nevada Supreme Court's decision was an unreasonable application of <u>Jackson v. Virginia</u>.

The court already has determined that ground 1(B) is procedurally defaulted, regardless of any alternative holding on the merits, and that petitioner could not show cause to excuse the procedural default because the purported cause itself was an unexhausted ground which petitioner dismissed.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 1.

The court found that parts of ground 2 were not exhausted, and they were dismissed. The remaining parts of ground 2 are claims that the trial court erred when it denied admission of both petitioner's prior statements to the police and a videotape of petitioner speaking to his grandmother after being interviewed by the police.

Regarding the videotape, the Nevada Supreme Court held:

> Following his arrest, Wadsworth was allowed to talk to his grandmother and an aunt in a police interrogation room, which had a camera that recorded the conversation. During the conversation, Wadsworth stated that there was another shooter at the crime scene. Wadsworth argues that the district court erred by not admitting a videotape of Wadsworth telling his relatives that a second shooter was present when Esparza was shot. However, a review of the record reveals that Wadsworth did not seek admission of the videotape. Therefore, the district court did not err in failing to admit it.

Ex. 75, at 1-2 (ECF No. 14-14, at 2-3). Petitioner has not demonstrated that the Nevada Supreme Court's determination that he did not seek admission of the videotape is unreasonable or wrong.

The part of ground 2 regarding the admission of petitioner's prior statements to police is related to ground 4, in which petitioner claims that he was forced to testify because the trial court

rejected his attempts to impeach the detective with his own statements to the detective. The court considers the two claims together. The Nevada Supreme Court held:

> Wadsworth further argues that he should have been allowed to question Detective David Fogerty [sic] about his statements to his grandmother and aunt concerning a second shooter at the crime scene. A review of the record reveals that Wadsworth testified that he told his grandmother and aunt that a second shooter was present when Esparza was killed. Wadsworth has failed to identify what additional helpful information would have been elicited had he been able to question Detective Fogerty on this matter. Therefore, even assuming error, we conclude that Wadsworth was not prejudiced by any limitation on the questioning of Detective Fogerty.
>
> Additionally, Wadsworth argues that, but for the district court's error in limiting Detective Fogerty's questioning, he would not have had to testify because the second gunman theory would have been presented through Detective Fogerty. However, the decision to testify is a strategic decision. As such, it was Wadsworth's prerogative to testify knowing the strength of the State's case. By choosing to testify, Wadsworth accepted both the risks and the rewards that accompanied his testimony.

Ex. 75, at 2 (ECF No. 14-14, at 3). Detective Duncan interviewed petitioner. Detective Fogarty—that is the correct spelling of his name—observed the interview. Detective Fogarty testified at trial. To outline what is relevant to these grounds:

(1) Detective Fogarty testified that nobody told him about the possibility of a second shooter.

(2) Detective Fogarty is confronted with the transcript of the police interview of Cisco Neal, who said that there was a second shooter.

(3) Detective Fogarty then corrects his testimony.

(4) Detective Fogarty is asked on redirect examination whether there was any corroboration of a chubby dude with a gun. He says no. He says that Detective Duncan interviewed petitioner, and that he was present. He says that he still had no information about a chubby dude with a gun, other than Cisco Neal's statement. Ex. 34, at 57 (ECF No. 13, at 58).

Petitioner argues that (4) is untrue, because petitioner himself gave a statement that another person was shooting, and that he was not allowed on recross-examination to confront Detective Fogarty with that statement. Although the prosecution could offer petitioner's statement into evidence because it was an admission by a party-opponent, petitioner himself could not do that because then his statement is inadmissible hearsay. Petitioner was trying to get his denial of shooting Esparza to the jury without having to testify and be subject to cross-examination. Petitioner also argues that the trial court did not let him inquire about his own statement because the prosecutor asked questions on redirect examination. It was more complicated than that.

> THE COURT: Motion to bring in Mr. Wadsworth's testimony through you [Detective Fogarty], through his interview, is denied.
>
> I am very concerned about what's in Mr. Wadsworth's statement. I do not have it. The questions deal with Mr. Hahn [the prosecutor] addressing the detective about Mr. Wadsworth's interview. If there is anything in Mr. Wadsworth's interview about a chubby dude with a gun, if he describes any people as a chubby dude, if he talks about the chubby dude being there, anything, I will let you go into it.
>
> But if he doesn't, the door wasn't opened. And the reason that the door wasn't opened is that this was on redirect, after you had violated pretrial orders, you had violated the Court's decision numerous times, you continued to ignore the Court's sustaining of objections, and went into areas that you were not supposed to go into.
>
> You [defense counsel] knew what you were doing, you made a tactical decision to do it. I'm very concerned that Mr. Hahn asked anything about Mr. Wadsworth's interview. I think that that was unnecessary, and it's going to create a problem for the appellate court. But I'm here now, the questions clearly in my mind, both when they were read back to me and as they happened, related to the chubby dude, and the fact that—whether or not he existed or not, and whether or not it was police misconduct to not somehow find the chubby dude.
>
> And I'm taking it in that perspective. If Mr. Wadsworth, as I've asked you two times now, said in his interview that there was somebody described as a chubby dude with a gun, who was either with a gun or shooting a gun, I'll let you go into it. Otherwise, it's improper and I'm not going to allow it.
>
> And I'm concerned with this whole process, because it is certainly creating enough muddy of the water for the appellate court to have lots of fun with this transcript, and I'm not particularly pleased with the way it's going.

Ex. 34, at 73-74 (ECF No. 13, at 74-75). The trial court did not bar completely petitioner from using his interview with police. The trial court did allow petitioner to impeach Detective Fogarty with any statements by petitioner in the interview about a chubby dude being present, with or without a gun. Petitioner did not impeach Detective Fogarty with those statements because those statements do not exist. Petitioner only said that he heard shots, and he never gave his own description of the shooter. Petitioner's only description of the shooter was second-hand, by other people. Even then, that description did not mention any chubbiness, only that the shooter was from California. Ex. 126, at 41 (ECF No. 16-10, at 42).

The Nevada Supreme Court's determination that petitioner was not forced to testify on his own was not an unreasonable application of federal law. Petitioner's interview with the police was inadmissible hearsay if he tried to offer it into evidence. Contained in the interview was a description of another shooter that itself was inadmissible hearsay. Barring petitioner from

admitting the transcript of the interview did not prevent him from presenting a defense at trial, because he still could, and did, testify, subject to cross-examination.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for grounds 2 and 4.

Ground 3 is a claim that the admission of photographs deprived petitioner of his rights to due process and a fair trial. On appeal from the denial of the post-conviction habeas corpus petition, the Nevada Supreme Court summarily affirmed the state district court's denial of the claim. Ex. 123, at 3-4 (ECF No. 16-7, at 4-5). The state district court summarily denied the claim. Ex. 103 (ECF No. 15-12). At the start of the trial, the trial court ruled that these pictures could be admitted:

> And then we have the 3 series. Although pictures are never pleasant, I don't find these to be unusually grotesque or gruesome nor highly inflammatory. . . .

Ex. 31, at 15 (ECF No. 11-10, at 21).

> Objection is overruled. I don't find it to be inflammatory or overly gruesome. So I will allow Exhibit 11A to be admitted.

Ex. 31, at 18 (ECF No. 11-10, at 24). This is a matter of state evidentiary law, which does not implicate any constitutional right unless it renders the trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 67-68, 75 (1991). The court has reviewed the pictures. The court can say that they are not pleasant. The court cannot say that the state district court's decision to admit them was an unreasonable application of McGuire. Ground 3 is without merit.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 3.

Ground 5 is a claim that the trial court erred when it refused to give petitioner's proposed instruction to the jury. On this issue, the Nevada Supreme Court held:

> Wadsworth next argues that the district court erred by declining to give the following proposed jury instruction:
>
> > If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt the interpretation which points to the defendant's innocence, and reject that which points to his guilt.

> The district court declined to give this instruction, stating that it "could be interpreted to change the burden of proof instruction, which would be improper." This court has ruled that, so long as the jury is properly instructed on the reasonable doubt standard, it is not error to refuse to give an instruction similar to the one that Wadsworth proposed. As the district court properly instructed the jury on the reasonable doubt standard, we conclude that it did not err in declining to give the requested instruction.

Ex. 75, at 3-4 (ECF No. 14-14, at 4-5). In <u>Bails v. State</u>, 545 P.2d 1155, 1156 (Nev. 1976), the Nevada Supreme Court held that it is not error to refuse to give this instruction if the jury is properly instructed regarding reasonable doubt. The Nevada Supreme Court also held that the district court has the discretion to give the instruction even if the jury has been properly instructed regarding reasonable doubt. Finally, the Nevada Supreme Court cited and quoted with approval <u>Holland v. United States</u>, 348 U.S. 121 (1955), which held that circumstantial evidence and direct evidence are not intrinsically different, and which noted that an instruction similar to what petitioner proposed often is confusing and incorrect.

      <u>Holland</u> came to the Supreme Court of the United States after the direct appeal from a federal criminal conviction. The Court was exercising its supervisory powers over federal criminal law, and it did not make any constitutional ruling. This court has been unable to find any clear establishment by the Supreme Court of the United States that a defendant has a constitutional right to a jury instruction on reasonable doubt other than what is statutorily and constitutionally required. It is likely that no such ruling exists, given that deviations from the constitutional definition of reasonable doubt are vigorously challenged during arguments to the jury, on appeal, and on post-conviction review. The jury in petitioner's case received the statutory instruction regarding reasonable doubt. Under these circumstances, the Nevada Supreme Court's determination that the district court did not need to give the proposed instruction was not contrary to, or an unreasonable application of, clearly established federal law.

      In the reply brief, petitioner argues that the instruction on self-defense incorrectly used the word "reasonable" when the correct word was "unreasonable." This is a separate claim for relief that appears nowhere in the second amended petition. The reply brief is not the correct method to

introduce a new claim, and the court will not consider it.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).[1]

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 5.

Ground 6 contains claims of ineffective assistance of counsel.  A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (citation omitted).

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . .  The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 562 U.S. 86, 105 (2011) (citations omitted).

---

[1] In petitioner's favor, he does seek leave to amend the petition to add claims about the self-defense instruction.  The court denies that motion below.

1    In ground 6(A), petitioner claims that counsel failed to investigate the case and failed to
2 understand the evidence.  Specifically, petitioner claims that counsel thought that the prosecution's
3 firearms expert had eliminated the Colt .38 Special revolver recovered from the trash can as the
4 source of the bullets recovered from Esparza and from the walls.  Petitioner bases this upon
5 counsel's cross-examination testimony at the evidentiary hearing in the state post-conviction
6 proceedings:

> Q      So at trial then, his testimony was he did not fire the fatal shot.  He fired into the ground.
>
> What I'm asking you is: Did he tell you that he authorized you to admit to the jury that, in fact, he had killed that man?
>
> A      [By trial counsel] Again, I don't know that Michael ever knew whether—as I remember it, he fired blindly toward the ground.
>
> Q      Okay.
>
> A      Okay?  So I don't know that Michael, to this day, knows specifically whether his bullet hit the victim or Ace's, the second gunman's bullet hit the victim.
>
> And since we never got Ace's gun, the forensics never ruled out Ace.  <u>And here's Michael, his gun isn't the one that fired the bullet.</u>  Forensically can't be proven.  So here we were.  I mean, it was an unknown to the end of the trial.

16 Ex. 104, at 15 (ECF No. 15-13, at 16) (emphasis added).  Petitioner argues that the emphasized
17 portion of counsel's testimony shows that counsel incorrectly thought that the firearms expert
18 eliminated the recovered Colt .38 Special revolver, which petitioner had possessed and discarded at
19 the place of the shooting.  However, in the very next sentences counsel noted it was unknown
20 whether petitioner's gun had fired the bullet that hit Esparza.  In context, counsel likely was
21 repeating petitioner's argument—that petitioner did not fire the bullet that hit Esparza—and was not
22 stating his own belief about the firearm's expert's conclusions.
23    In any event, counsel's testimony at the evidentiary hearing is not what the jury heard.
24 When counsel cross-examined Lattyak, the firearms expert, this is what the jury heard:

> Q.     Mr. Lattyak, you indicated that you could not eliminate this particular Colt 38, is that right?
>
> A.     That's correct.
>
> Q.     You couldn't eliminate any Colt 38, right?

| | | |
|---|---|---|
|1| A. | With the same class, yes, that's correct.|
|2| Q. | How many Colt 38s are in this country on the streets?|
|3 4| A. | I can't give you an exact answer, but I would think Colts, probably hundreds of thousands if not more revolvers, over the years.  They're a very well known and old company, established company.|
|5 6| Q. | So when you get a general question like what you can't eliminate, you can't eliminate 100,000 or more guns in this case, right?|
|7| A. | Oh.  Easily, yes.|

Ex. 35, at 24 (ECF No. 13-1, at 25).  The testimony then went to explore what other brands of revolvers had the same properties as a Colt .38 Special revolvers.  In closing argument, trial counsel noted that the firearms expert testified that there were a large number of guns with the same properties as petitioner's gun.  Id. at 139-40, 142 (ECF No. 13-1, at 140-41, 143).  Counsel's argument was not that the expert had ruled out petitioner's Colt .38 as the source of the bullets.  Instead, counsel's argument was that the bullets could were fired from a gun of a class so numerous that the jury could not conclude that petitioner's gun was the source of the bullets.  Counsel did not provide ineffective assistance on this issue.

In ground 6(B), petitioner claims that trial counsel was ineffective because there was no good or sound reason for his choice of defense.  Petitioner argues that counsel should have pursed a defense of self-defense or defense of others.  This defense is incompatible with the defense that petitioner presented, which was that he was there with a gun, but that he shot into the ground and another person shot Esparza.  On this issue, the Nevada Supreme Court held:

> Appellant specifically argues that trial counsel was ineffective for pursuing a defense theory that someone else shot the victim, rather than a theory that appellant shot the victim in self-defense.  The district court found that appellant failed to demonstrate that counsel's theory of defense was unreasonable or that a different theory of defense had a reasonable probability of altering the outcome of the trial.  We conclude that the district court's findings are supported by substantial evidence and are not clearly wrong.  Appellant's own testimony at trial supported this "second shooter" theory of defense.  He testified that during the altercation between his friends and the victim and others, he heard several gun shots, so he fired several shots at the ground near the victim.  When he later learned that the bullet that hit the victim was not a ricochet, he "felt relieved, because I know that I didn't point the gun at anyone, and I know that I was shooting at the ground . . . . So I know that I did not commit the crime."  He also testified that, following his arrest, he told his grandmother and aunt that a second shooter had killed the victim.  Furthermore, other evidence at trial supported his defense of a second shooter.  His friend, who was one of the men involved in the altercation, told the police that another man with a gun was present at the time of the shooting.  There

> was also differing testimony from witnesses as to the number of shots fired and the number of men involved in the altercation. Thus, in light of appellant's own statements and other witnesses' testimony, the "second shooter" theory was not unreasonable. Moreover, appellant failed to demonstrate a reasonable probability that a self-defense theory would have altered the outcome of the trial. The evidence at trial showed that his friends had initiated the altercation, and there was little, if any, testimony, other than from appellant, indicating that he shot the victim in self-defense. Because appellant failed to demonstrate deficiency or prejudice, we conclude that the district court did not err in denying this claim.

Ex. 123, at 2-3 (ECF No. 16-7, at 3-4). The evidence available to counsel at the start of the proceedings, based upon his discussions with petitioner, was that a second shooter was present, and that second shooter killed Esparza. Counsel also testified that petitioner never told him to admit that petitioner had killed Esparza, which was necessary for a defense of self-defense. The Nevada Supreme Court reasonably applied <u>Strickland</u>.

In ground 6(C), petitioner argues that trial counsel's ineffective presentation of the second-shooter theory forced petitioner to present unprepared testimony regarding the second shooter. The court agrees with respondents that petitioner has not demonstrated deficient performance or prejudice, namely, what else counsel should have done and how that would have led to a reasonable probability of a different result.

Ground 6(D) has been dismissed as unexhausted.

In ground 6(E), petitioner argues that trial counsel was ineffective for failing to hire an expert witness to counteract the prosecution's firearms expert. The court agrees with respondents. Counsel did get the expert to agree that the bullets could have come from a large class of .38 Special revolvers, including the Colt that the police recovered. Petitioner does not demonstrate what his own expert would have found.

In ground 6(F), petitioner argues that trial counsel was ineffective because he waived petitioner's presence during some of jury selection. The court agrees with respondents. Petitioner has not alleged any facts showing that counsel performed deficiently by waiving petitioner's presence during this part of the jury selection, nor has petitioner alleged any facts showing that he suffered prejudice.

Ground 6(G) has been dismissed as unexhausted.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 6.

Ground 7 contains claims of ineffective assistance of appellate counsel. "A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." Evitts v. Lucey, 469 U.S. 387, 396-397 (1985). Appellate counsel need not raise every non-frivolous issue on appeal to be effective. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). A claim of ineffective assistance of appellate counsel is evaluated the same way that a claim of ineffective assistance of trial counsel is evaluated. Miller v. Keeney, 882 F.2d 1428, 1433-34 (9th Cir. 1989).

In ground 7(A), petitioner claims that appellate counsel failed to present issues on direct appeal as issues of federal law. The court has reviewed the issues that petitioner presented on direct appeal. See Ex. 63 (ECF No. 14-2). The court has resolved all those issues on the merits. To the extent that a failure to present appellate issues as issues of federal law is an addressable claim of ineffective assistance of counsel, petitioner has failed to demonstrate prejudice.

Ground 7(B) has been dismissed as unexhausted.

Ground 7(C) is a claim that appellate counsel failed to challenge the district court's ruling admitting gruesome photographs at trial. The court has resolved the underlying issue, in ground 3 of the second amended petition, on the merits. Petitioner has suffered no prejudice.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 7.

Also before the court are petitioner's motion for leave to file third amended petition (ECF No. 65), respondent's opposition (ECF No. 69), and petitioner's reply (ECF No. 70). Instruction 22 stated, in part: "An honest but reasonable belief in the necessity for self-defense does not negate malice and does not reduce the offense from murder to manslaughter." Ex. 37 (ECF No. 13-3, at 25) (emphasis added). It should have stated, "An honest but unreasonable belief . . . ." Petitioner wants to add a claim that the instruction violated due process, that trial counsel provided ineffective assistance by failing to present an adequate defense of self-defense and by proffering the erroneous

instruction, and that appellate counsel provided ineffective assistance by not challenging the erroneous instruction on appeal.

By themselves, these proposed grounds are untimely under 28 U.S.C. § 2244(d). Petitioner's judgment of conviction became final long ago, and even with statutory tolling of § 2244(d)(2), the one-year period of limitation has expired.

Amended grounds and original grounds must be tied to a common core of operative facts for the amended grounds to relate back to the date of the original petition. See Mayle v. Felix, 545 U.S. 644, 664 (2005). Part of proposed ground 6(H), that trial counsel failed to present an adequate defense of self defense, is the same as ground 6(B). Technically, that part of ground 6(H) could relate back to ground 6(B), but the court would not allow amendment for that part of ground 6(H) because it is redundant. The claims regarding the erroneous instruction on self defense, which are proposed grounds 7(D), 8, and 6(H) in part, do not share a common core of operative fact with any other ground in the second amended petition. An operative fact in these three grounds is that the jury instruction on self-defense was erroneous, and that fact appears nowhere in the second amended petition.

Petitioner also cannot demonstrate that equitable tolling is warranted. "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The Nevada Supreme Court found that the instruction was erroneous, but harmless, in an unpublished opinion in 2006, before petitioner's judgment of conviction became final. Dixon v. State, No. 44688.[2] Even if petitioner was unaware of the Dixon direct-appeal decision—it was unpublished—the error in the self-defense instruction in his case was there for him to read. He knew, or could have known with the exercise of diligence, about the error before his judgment of conviction became final. Petitioner points Dixon v. Williams, 750 F.3d 1027 (9th Cir. 2014), in

---

[2] http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=12539 (report generated March 19, 2017).

which the court of appeals held that the erroneous instruction violated due process and was not harmless. Even if the decision in <u>Dixon v. Williams</u> could somehow generate a new period of limitation under § 2244(d)(1), that decision became final on June 11, 2014, one year and nine months before petitioner filed his motion for leave to amend. All during that time, petitioner was represented by counsel and litigating this action. No extraordinary circumstances existed that could have prevented petitioner from moving to amend his petition before he actually did.

IT IS THEREFORE ORDERED that petitioner's motion for leave to file third amended petition (ECF No. 65) is **DENIED**.

IT IS FURTHER ORDERED that the second amended petition for writ of habeas corpus (ECF No. 26) is **DENIED**. The clerk of the court shall enter judgment accordingly and close this action.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

DATED: March 28, 2017

_____
Gloria M. Navarro, Chief Judge
United States District Court